# Def.'s Opp'n to Prelim. Inj.

# Exhibit 2

# Declaration of Ennis McCrery

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

SPEECH FIRST, INC.,                          )
                                             )
                                             )
                Plaintiff,                   )        Civil Action No. 7:21-cv-203
                                             )
        v.                                   )
                                             )
TIMOTHY SANDS,                               )
                                             )
                                             )
                Defendant.                   )

## DECLARATION OF ENNIS MCCRERY

I, Ennis McCrery, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief.

1.      I currently serve as the Director of Student Conduct at Virginia Polytechnic Institute and State University ("Virginia Tech" or the "University"). I have worked in Student Conduct since 2017. I became the Interim Director of Student Conduct in 2018, and I have served as Director of the office since June 2019. Prior to my roles in Student Conduct, I served as Virginia Tech's graduate student ombudsperson from 2007 to 2015, and as a Title IX investigator from 2015 to 2017.

2.      In my capacity as Director of Student Conduct, I am the Chief Student Conduct Officer for the University, which means that I am responsible for administering the University's Student Conduct system. When a person accepts admission to Virginia Tech as student in any capacity, he or she also accepts membership in the University community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines standards established by the University's Board of Visitors for students' behavior, along with procedures for

1

adjudicating and sanctioning violations of those standards. Those procedures constitute the University conduct system. *See* **Exhibit A, Student Code of Conduct**. The Student Code of Conduct applies to all students and student organizations at Virginia Tech.

3.      My office reports to Assistant Vice President for Student Affairs Dr. Frances Keene, who reports to Vice President for Student Affairs Dr. Frank Shushok. My office does not report to the Dean of Students Office, nor does anyone in the Dean of Students Office report to me or anyone in Student Conduct. In short, there are no supervisory relationships or reporting lines between the Dean of Students Office and Student Conduct. Although my office at times collaborates with the Dean of Students Office in serving the Virginia Tech community, we serve distinct and separate functions. Like any individual or University office, the Dean of Students Office may refer an incident to Student Conduct for behavior that may violate the Student Code of Conduct. The Dean of Students Office, however, has no special or automatic referral power or prerogative: their referrals are adjudicated or otherwise resolved in the same fashion as any other referral from any other individual or office at Virginia Tech.

4.      The Student Code of Conduct outlines certain principles that inform the Student Conduct process. Among those fundamental values are: "to nurture learning and growth for all community members, to encourage open expression, and to respect our differences and common humanity." Ex. A at pg. 3.

5.      Similarly, "[s]tudents at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia.  This includes activities protected under the First Amendment. In accordance with the Code of Virginia, incidents of disruption of constitutionally protected speech may be reported via the Speech on Campus webpage." Ex. A at pg. 4.

6.      The process by which allegations of violations of the Code of Student Conduct are heard and resolved is outlined on pages 14 through 22 of the Student Code of Conduct. Ex. A. The specific procedures that apply vary with the nature and seriousness of the underlying circumstances of the particular case. Where the alleged conduct could lead to a more severe sanction, such as a separation from the University or other loss of privilege, the process affords enhanced procedural protections, including the immediate ability to appeal, to ensure that all student rights are protected.

Any person, including people outside the Virginia Tech community, may submit a complaint, known as a "conduct referral," to the Office of Student Conduct. While there is no time limit for referrals, "Student Conduct encourages people who plan to bring a complaint against a Virginia Tech student to do so as quickly and prudently as possible." Student Conduct will only address complaints alleging conduct by a student during the time that student was enrolled at Virginia Tech; allegations regarding behavior before enrollment or after graduation fall outside the purview of Student Conduct.

After a referral is received, Student Conduct reviews the allegations to determine if there is information regarding behavior that may violate the Student Code of Conduct and warrants resolution through the conduct system. This review may include a meeting with the person(s) who submitted the complaint and/or an investigation to gather additional information. Where it is clear that the alleged facts do not articulate a violation of the Student Code of Conduct, referrals to Student Conduct often do not proceed past this initial review stage. A student who is the subject of such a referral may not even be contacted by a representative from Student Conduct or otherwise be aware that a report was submitted. After the referral is reviewed, Student Conduct will determine a process for the resolution of the complaint, which could include:

- Agreed Resolution: an informal resolution option in which the respondent student meets with a hearing officer to discuss an incident and collaborates with the hearing officer to determine whether they violated a policy and, if so, what sanctions may be appropriate. A student who agrees to a resolution waives the right to a formal hearing and the resolution is final. If an agreement cannot be reached, the respondent has the option to move forward to a formal hearing with a new hearing officer.

- Formal Hearing: In a formal hearing, the hearing officer(s) determines whether the respondent student violated policies in the Student Code of Conduct, along with appropriate sanctions, if necessary. Most times a student is charged with a violation that could lead to suspension, the charge will be addressed through the formal hearing process. Moreover, any student charged with a less serious violation may request a formal hearing. In formal conduct hearings, the respondent is entitled to the following procedural guarantees and opportunities: (1) to receive written notice of charges at least five business days in advance of the hearing and in reasonable detail to allow the respondent to prepare for the hearing; (2) to share their version of events and refute any information presented; (3) to present witnesses/witness statements and question any witnesses present; (4) to remain silent or not participate; (5) to be accompanied by an advisor; (6) to challenge the objectivity of a hearing officer, given reasonable cause to believe that she may be biased or have a conflict of interest; and (7) to appeal if there is a loss of privilege (i.e., suspension, dismissal, denial of housing, etc.), provided there are appropriate grounds as found in the Student Conduct formal Hearing Appeals section. *See* Ex. A at pgs. 19-20.

4

- Adaptable Conflict Resolution: When complaints/referrals to Student Conduct are based in conflict between individuals or groups, Student Conduct may offer adaptable conflict resolution options to students, including mediation, facilitated dialogue, or conflict coaching. Participation is optional, and in the case of mediation or facilitated dialogue, all parties must agree to participate. These options may result in a mutually satisfactory agreement between the parties, but it is not required.

- Educational Conversation: An educational conversation is a discussion between a student and hearing officer in Student Conduct regarding behavior that does not rise to the level of a policy violation but is, nevertheless, inappropriate or having a negative impact on the student or others or, if it continues, may become a policy violation. These conversations are educational and supportive in nature, are always voluntary for the student, and never result in sanctions. These conversations are also entirely separate from the process facilitated by the Bias Intervention and Response Team ("BIRT"). Importantly, if BIRT determines that a conversation with a student is the appropriate resolution for a report, those cases will not be referred to or resolved through Student Conduct.

The standard of proof applied throughout the conduct system is preponderance of the evidence. Should a student ultimately be found responsible for violating the Code of Conduct, possible sanctions include: (1) formal warning, (2) probation, (3) deferred suspension, (4) suspension, (5) deferred dismissal, (6) dismissal, (7) denial of privileges or associations (such as housing, athletic events, or recreational sports privileges), (8) restitution, (9) educational,

5

community, and wellness activities. The Student Code of Conduct also provides a process by which students may pursue an appeal of the hearing officer's findings. Ex. A at 19-20.

7.      The Student Code of Conduct notes several other University-wide policies and provides that violations of other policies be "actionable under the Student Code of Conduct" in certain circumstances. Although those policies apply to the entire University community, any disciplinary proceedings or formal charges of violations would be referred to Student Conduct and proceed according to the process outlined in the Student Code. In other words, the Student Code of Conduct is the exclusive process by which students are adjudicated to be in violation of University policy and sanctioned for any such violations.

8.      The Student Code of Conduct specifically prohibits students from engaging in "harassment," which it defines as "[u]nwelcome conduct not of a sexual nature that is sufficiently severe, pervasive, or persistent that it could reasonably be expected to create an intimidating, threatening, or hostile environment that limits the ability of an individual to work, study, or participate in the activities of the university." Ex. A at pg. 9. This definition is generic in that it prohibits all types of harassment.

9.      When a student is charged under the Student Code of Conduct with harassment, the student is charged under the harassment section of the Student Code of Conduct, not under the University's Policy 1025, which addresses issues of discrimination and harassment across the entire University community. During my years of leadership in Student Conduct, no student has ever been charged with violating Policy 1025. Although Policy 1025 applies to the entire Virginia Tech community, allegations of harassment by students are adjudicated through the Student Conduct process, and sanctions would only ever be imposed under the Student Code of Conduct.

10.     The Student Code of Conduct provides for an enhancement of sanctions where the Student Conduct hearing officer concludes that a violation of the policy was motivated by bias. Specifically, the Student Code of Conduct provides that "Any violation of the Virginia Tech Student Code of Conduct found to be motivated by an individual's age, color, sex (including pregnancy), gender, gender identify, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, or veteran status (as stated in Virginia Polytechnic Institute and State University Policy and Procedures No. 1025) will be deemed an aggravating fact and will subject the student to a sanction more severe than would be imposed in the absence of such motivation." Ex. A at 12. Accordingly, expressions of bias do not independently violate the Student Code of Conduct but, where they accompany actions that are violations, may enhance the sanction imposed.

11.     For a student's conduct to constitute "harassment" under the Student Code of Conduct, the student's behavior must be targeted; that is, the student's behavior must be directed toward another student or specific group of students. A general statement of beliefs that is not targeted at another individual does not satisfy the definition of harassment. This is because the definition of harassment requires that the conduct at issue is so severe, pervasive, or persistent as to be "reasonably [ ] expected" to create an environment "that limits the ability of an individual to work, study, or participate in the activities of the university." Ex. A at pg. 9.  Over the course of my four years in the Student Conduct office, I am not aware of any case in which a student was charged with violating the policy against harassment in the Student Code of Conduct simply as a result of views the student expressed.

12.     I have reviewed the Student Conduct office's case files over the past five years. During that period, approximately 9,100 students were referred to Student Conduct. Of those

7

referrals, only 52 resulted in "responsible" findings for harassment. Cases implicating potential harassment have been consistent over this five-year period. Importantly, most of these harassment cases do not involve allegations of bias or discrimination. I have located only 14 cases in which bias or discrimination was related to or part of a charge of harassment since 2017. Of those 14 cases, only 5 resulted in "responsible" findings for harassment.  The following is a brief summary of those 5 cases:

- A student was found responsible for harassment for knocking off a woman's hijab at a party and continuing to make insulting comments about her gender and the proper place for women in society. For this targeted behavior that arguably included assault, the responding student received a deferred suspension. No bias enhancement was articulated in the rationale for the imposed sanction. This complaint was referred to Student Conduct by the Title IX office.

- A student was found responsible for harassment for repeatedly referring to a fellow student by the "n" word, despite being repeatedly asked to stop. The responding student also made additional derogatory comments about the complaining student's race and gender, both to other students and to the complaining student personally. For this targeted behavior, the responding student received a deferred suspension. No bias enhancement was articulated in the rationale for the imposed sanction. This complaint was referred to Student Conduct by a student.

- A student was arrested by the Virginia Tech Police Department after completely disrobing, yelling obscenities, and making lewd gestures toward women with his anatomy. As police responded to detain the student, he physically assaulted one of the officers. This student was found responsible for, among other things, harassment, and received a sanction of

suspension. No bias enhancement was articulated in the rationale for the imposed sanction. This complaint was referred to Student Conduct by the Virginia Tech Police Department.

- Shortly after the beginning of the COVID-19 pandemic, a student was found responsible for harassment for approaching an Asian American student and her boyfriend in a parking lot and repeatedly saying "Fuck you, you're Asian!" to them. When confronted, the responding student asked if the complaining student wanted to fight. The responding student received a sanction of suspension, which may also have reflected a second, unrelated case against the student. A bias enhancement was noted in the sanction against this responding student. This complaint was referred to Student Conduct by a student.

- A student was found responsible for harassment for repeatedly and falsely making noise complaints against a fellow student, and for making homophobic slurs to the complaining student. The responding student also approached the complainant in a manner intended to physically intimidate that student. This complaint was referred to Student Conduct by Housing and Residence Life. No bias enhancement was articulated in the rationale for the imposed sanction.

13.     Of the remaining 11 referrals for harassment that potentially involved bias, 4 officially came from BIRT, only one of which was referred by BIRT alone rather than being a joint referral with another entity or office. None of these four referrals resulted in a responsible finding specifically as to the charge of harassment.[1] The following is a brief summary of those 4 cases:

_____

[1] In addition to the cases formally referred by BIRT, BIRT may suggest that a complaining student reach out to the Student Conduct Office directly. Student Conduct has received referrals in this manner.

- A student reported harassment on social media resulting from an Instagram post expressing an unpopular opinion about illegal immigration. No policy violations were charged because all involved parties were engaged in First Amendment protected speech.

- A student was charged with disrupting a meeting on Zoom. The student made statements including "Shut up bitch" and "Kill the vegans." The student was found responsible for disorderly and disruptive conduct, but not for harassment. No bias enhancement was articulated in the rationale for the imposed sanction. This referral came from BIRT and the Virginia Tech Police Department.

- A student was charged with stealing an Israeli flag that had been hung outside a campus building. This charge resulted in a voluntary agreed resolution meeting, during which the student agreed to be found responsible for disorderly and disruptive conduct. The student further agreed to a sanction of probation and participation in a restorative circle that was agreed to by all parties. No bias enhancement was imposed because of the student's agreement to participate in the process. The student was not charged with or found responsible for harassment. This referral came from BIRT and the Virginia Tech Police Department.

- A student organization was referred to Student Conduct after dozens of students reported allegedly discriminatory social media posts made by the members of that organization. No policy violations were charged because the alleged conduct involved free speech protected under the First Amendment.

14.     Of the remaining referrals to Student Conduct for alleged harassment involving potential bias, 3 are noteworthy because they exemplify the protections the University and the Student Conduct system facilitate for free speech. The first two are related: a student reported

10

another student for making certain allegedly white supremacist social media posts. The responding student ultimately made his own report to Student Conduct against the original reporting student for harassment. These cases proceeded through the Student Conduct hearing process because they involved allegations of targeted threats, not merely as a result of the alleged online speech, which is protected under the First Amendment. Ultimately neither student was found responsible, in part because the First Amendment protected each student's right to voice his or her own opinions.

In a separate case, two students were charged with unauthorized entry, theft, and disorderly or disruptive conduct for stealing a Trump/Pence political sign. After being confronted with their actions, the students confessed and returned the sign. The students voluntarily participated in an agreed resolution meeting, in which they agreed to be found responsible and receive a sanction of a deferred suspension. The students were not charged with or found responsible for harassment. No bias enhancement was articulated in the rationale for the imposed sanction. This complaint was referred to Student Conduct by the Virginia Tech Police Department.

15.     In my capacity as the Director of Student Conduct, I serve on BIRT to assist with any matters referred to BIRT that may also involve violations of the Student Code of Conduct. Importantly, my service on BIRT does not give BIRT or the Dean of Students Office any additional authority in making referrals to Student Conduct. Any person or office may make a referral to Student Conduct, and each of those referrals will be approached objectively and in accordance with the procedures outlined above.

16.     Unlike the Student Conduct system, which governs students upon their acceptance of admission to Virginia Tech, the BIRT process is entirely voluntary for students. Students may voluntarily choose to report an incident to BIRT. Moreover, if a student is contacted by a member

of BIRT and asked to discuss an incident, the student can decline the conversation—or choose not to respond to the individual at all—without consequences.

17.     When BIRT convenes on a weekly basis to review reports of potential bias-related incidents, the team often decides that a reported matter involves protected speech. Protected speech never results in a referral to Student Conduct. In such cases, the BIRT members may provide supportive services to the reporting student, but no disciplinary proceedings will follow.

18.     The development of BIRT has improved the process for handling bias complaints by diverting complaints that do not allege violations of the Student Code of Conduct from the Student Conduct system to other University offices that can provide a more tailored response to meet the needs of the students involved.

19.     I have reviewed Plaintiff's Brief in Support of Its Motion for a Preliminary Injunction, Dkt. 4, as well as the reports attached as Exhibit J to Dkt. 4-1. Each report describes a bias-related incident referral the University received during the fall 2018 semester. In my various roles in the Student Conduct office, I reviewed and handled referrals made to Student Conduct throughout the relevant time period covered by these reports. To the best of my knowledge, none of the reports contained in Exhibit J to Dkt. No. 4-1 describes an incident that resulted in a referral to Student Conduct.

20.     Since I joined the Student Conduct Office in 2017, I am aware of only one type of charge that has been brought against a student at Virginia Tech under Policy 7000 or the Acceptable Use Standard: charges related to the possession or distribution of child pornography. I am not aware of any other violation of the University's information technology policies or acceptable use standards that has even been charged or adjudicated by Student Conduct.

21.     Alleged violations by students of the University's information technology policies, including Policy 7000: Acceptable Use and Administration of Computer and Communication Systems and the Acceptable Use of Information Systems at Virginia Tech Standard ("Acceptable Use Standard") would be handled through the Student Conduct system. There is no separate system for adjudicating student misconduct with regard to information technology resources. As provided in § 2.2 of Policy 7000, "Misuse or deliberate abuse of these services or data will result in investigation and enforcement when necessary. Alleged violations will be subject to established university disciplinary policies and procedures applicable to the relevant individual…" *See* **Exhibit B, Policy 7000.**

22.     The Acceptable Use Standard prohibits users from using Virginia Tech's "mail or messaging services to harass or intimidate another person, for example, by broadcasting unsolicited messages, by repeatedly sending unwanted mail, or by using someone else's name or credentials." **Exhibit C, Acceptable Use Standard**. This provision of the Acceptable Use Standard describes conduct that fits within the definition of "harassment" in the Student Code of Conduct. Were the Division of Information Technology to refer a student to Student Conduct for a violation of this provision of the Acceptable Use Standard—which, I reiterate, has not happened before—the incident would be evaluated under the harassment provision of the Student Code of Conduct.

23.     Student Conduct occasionally receives referrals regarding conduct by students that allegedly violates Policy 5215, regarding Sales, Solicitation, and Advertising on Campus. My practice during my four years with Student Conduct has been to refer those complaints to the Office of Student Engagement and Campus Life ("SECL") to remind the students or organizations involved of the applicable rules and to address as it deems appropriate. Student Conduct does not

seek to charge students with failing to observe rules and regulations related to informational activities out of respect for the students' First Amendment rights.  I am not aware of any Student Conduct charges related to Policy 5215 in the past 4 years.

24.     Violations of the Student Code of Conduct are maintained in a student's conduct record for a period of five years from the date of the incident. Notification of student conduct outcomes or decisions is shared with other University offices only on a need-to-know basis. Other University agencies or organizations may be required to obtain a written release from students before they can receive notification. Outside individuals or entities generally must obtain a waiver from the student to access to a student's conduct record.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2021, at Blacksburg, Virginia.

Ennis McCrery
Director of Student Conduct
Virginia Polytechnic Institute and State University

McCrery Decl. Ex. A







# STUDENT CODE OF CONDUCT





Effective June 22, 2020

# TABLE OF CONTENTS

I. Introduction ...................................................................................................................3

II. Student Rights and Responsibilities..........................................................................4

III. Jurisdiction ................................................................................................................5

IV. Definitions ................................................................................................................6

V. Prohibited Conduct....................................................................................................9

VI. Additional University Policies ................................................................................13

VII. Student Conduct Process .....................................................................................14

VIII. Sanctions..............................................................................................................17

IX. Formal Hearing Appeals .........................................................................................19

X. Interim Measures and Administrative Actions........................................................20

XI. Student Conduct Records.......................................................................................22

XII. Appendices ...........................................................................................................25

# I. Introduction

The Virginia Tech community is guided by the [university's motto](), *Ut Prosim* (That I May Serve), and is based on the fundamental values expressed in the [Principles of Community](): to nurture learning and growth for all community members, to encourage open expression, and to respect our differences and common humanity.

When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The *Student Code of Conduct* outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards. The code applies to all students and student organizations at Virginia Tech, as defined in this document. The university reserves the right to make changes to the code at any time.

Authority to approve policies and procedures for student discipline, as outlined in the *Student Code of Conduct,* lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the [Code of Virginia](). The Vice President for Student Affairs has responsibility for the university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct. The director serves as the Chief Student Conduct Officer for the university.

The *Student Code of Conduct* does not apply to matters of academic integrity. For information on policies and procedures related to student academic integrity, please refer to the following:

- [Undergraduate Academic Integrity]()
- [Graduate Honor System]()
- [Doctor of Veterinary Medicine Honor Code (Virginia-Maryland School of Veterinary Medicine)]()
- [Doctor of Medicine Honor Code (Virginia Tech Carilion School of Medicine)]()

## The Office of Student Conduct and the University Conduct System

The *Student Code of Conduct* is overseen by the Office of Student Conduct. The university's conduct system supports the educational mission of the university by educating students about appropriate behavior and fostering a community in which students can flourish academically and personally.

The system assumes that students and student organizations have the capacity to assume responsibility for their own behavior and that the university has the authority to establish an internal structure for the enforcement of its policies and procedures, which students have agreed to accept by enrolling in the university. As part of its authority, Student Conduct may suspend or dismiss students from the university.

Conduct matters are addressed by Student Affairs professionals who have been appointed as hearing officers by the Director of Student Conduct. These individuals each have significant education and training on student development, student discipline, and university policies and procedures.

### Additional Community-Specific Regulations

As part of their education and life at Virginia Tech, students may also be involved in organizations, programs, or other entities for which additional and separate standards and policies, including potential sanctions for violations, have been established. Students should be aware of additional policies that may apply to their involvement in certain programs, organizations, or communities, including but not limited to students in the Corps of Cadets, student athletes, members of certain Greek-letter organizations under the Office of Fraternity and Sorority Life, and students in certain colleges or programs, such as the Virginia Tech Carilion School of Medicine or the Virginia-Maryland College of Veterinary Medicine.

These policies and processes do not supersede a student's responsibilities under the *Student Code of Conduct*. In situations involving potential violations of policies in the *Student Code of Conduct* and community-specific policies, the student is accountable first to the university's *Code*. Additional sanctions may be issued by programs/organizations that address a student's participation or membership in those communities, specifically. Student Conduct is responsible for coordinating adjudication processes with these various entities, when appropriate.

## II. Student Rights and Responsibilities

As individuals, Virginia Tech students enjoy basic rights. As members of the university community, they also accept certain responsibilities.

### Rights

1. Students at Virginia Tech will be treated fairly and with dignity regardless of age, color, disability, sex (including pregnancy), gender, gender identity, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, or veteran status as described in university policy 1025.

2. Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia. This includes activities protected under the First Amendment. In accordance with the Code of Virginia, incidents of disruption of constitutionally protected speech may be reported via the Speech on Campus webpage.

3. The Student Code of Conduct and the policies and procedures it outlines, under the administration of the Office of Student Conduct, provides an administrative process for resolving allegations of misconduct. This process includes certain procedural guarantees to ensure that students receive a fair and equitable resolution.

**Responsibilities**

1. Students are responsible for understanding and following university policies and procedures, including the *Student Code of Conduct*, and for abiding by all applicable state, federal, and local laws.

2. University email is the primary means by which the university communicates with students; therefore, students are responsible for reading all official communications delivered to their university email address.

3. Students who are offered admission to Virginia Tech and choose to matriculate have a continuing duty to report to the Office of Student Conduct any arrests or convictions, other than minor traffic violations, as well as any protective orders issued against them. This duty applies regardless of where the arrest occurred and regardless of whether the university is in session at the time of the arrest or conviction. Students must notify Student Conduct in writing, using the Arrest Disclosure and Conviction Form,  within 10 business days of the incident that led to their arrest or within five business days of the incident that led to their conviction. Failure to comply with this continuing duty may result in disciplinary action under the *Student Code of Conduct.*

## III. Jurisdiction

### Enrollment Status

For the purposes of disciplinary action, a "student" is defined as any individual who has accepted an offer of admission as an undergraduate, graduate, or professional student and who has not yet graduated or officially transferred to another institution.

If a student's enrollment lapses for more than one calendar year, based on a student's voluntary decision not to enroll, that student will no longer be subject to disciplinary action. However, students who are separated from the university for academic or disciplinary reasons are still considered students for disciplinary purposes, regardless of the duration of the separation.

### Student Organizations

A student organization, as defined in this document (below), may be considered for disciplinary action if an incident(s) is determined to be an organizational activity, based on at least two of the criteria listed below. Student Conduct will consider the entirety of the information to determine whether to charge an organization.

- Any student serving as an executive officer of the organization who is aware of the incident sufficiently in advance of its occurrence to prohibit its taking place and takes no action to prohibit it.

- The incident involves the expenditure of any organizational funds.

- The incident involves or is actively or passively endorsed by a majority of the members of the organization.

- The incident occurs in property owned, rented, reserved, or used by the organization.

- Members and/or non-members of the organization learned about the event where the incident occurred through members or communication associated with the organization.

- The incident occurred as a result of individual members of the organization acting in the capacity as members of the organization.

Student leaders and members of organizations who are complicit in any violation of the *Student Code of Conduct* or who permit or condone behavior that violates the code may also be held accountable as individuals in addition to the organization.

### Location of Incidents

Students and student organizations that violate the *Student Code of Conduct* may be considered for disciplinary action whether the conduct occurs on or off university property.

The *Student Code of Conduct* may also apply to behavior conducted online or through an electronic medium. Students should also be aware that online postings such as blogs, web postings, chats and social networking sites are in the public sphere and are not private. The university does not regularly search for this information but may take action if and when such information is brought to the attention of university officials.

### Alleged Violations of Criminal Law

When conduct violates both criminal law and the *Student Code of Conduct*, disciplinary action may be taken by the university, irrespective and separate from criminal action. At the university's discretion, the Office of Student Conduct may proceed with disciplinary action prior to a criminal trial or postpone action until after trial.

## IV. Definitions

The following terms as used throughout the *Student Code of Conduct* are defined below. For definitions related to cases referred for formal adjudication under Title IX, refer to Appendix II.

| TERM | DEFINITION |
|---|---|
| Advisor | An advisor is one person of a student's choosing and cost who may accompany a student throughout the conduct process. They may consult with the student but not speak on the student's behalf or participate actively in the process. |
| Aggravating Factors | An aggravating factor is information, used during sanctioning (i.e., *after* a violation has been determined to have occurred), that may increase the sanction. Some factors may include but are not limited to a student's past conduct record and the nature and severity of the behavior and its impact. |
| Appeal | An appeal is a written request for review of a hearing and findings, based on specific grounds. |

| TERM | DEFINITION |
|---|---|
| **Appellate Officer** | An appellate officer is an employee of Virginia Tech, external to the Office of Student Conduct staff, designated by the Vice President of Student Affairs to review and respond to appeals. |
| **Charge(s)** | A potential violation of the *Student Code of Conduct*. |
| **Complainant** | Any individual who has reported a potential violation of the *Student Code of Conduct*. |
| **Conduct Officer or Hearing Officer** | A conduct or hearing officer is an individual designated by the Director of Student Conduct to adjudicate cases involving allegations of conduct violations. |
| **Conduct Referral** | A report or complaint that alleges violations of the *Student Code of Conduct* by a student(s) or student organization(s). |
| **Consent (general)\*** | Consent is generally defined as knowing, voluntary, and clear permission for something to occur. *For a more specific definition of consent in the context of sexual activity, please see the definition below. |
| **Consent (in the context of sexual activity)** | Consent is defined as knowing, voluntary, and clear permission by word or action, to engage in mutually agreed upon sexual activity. The existence of consent is based on the totality of circumstances, including the context in which the alleged consent occurred. Silence does not necessarily constitute consent and coercion, force, or threat of either party invalidates consent.<br>• Consent cannot be given where a person is incapacitated; or where a person has a disability; or is not of legal age to consent as defined by law.<br>• Consent to any one form of sexual activity cannot automatically imply consent to any other forms of sexual activity. Consent can be withdrawn at any time.<br>• Previous relationships or prior consent cannot imply consent to future sexual acts. |
| **Incapacitation** | Incapacitation includes but is not limited to being asleep, drugged, intoxicated, or unconscious. |
| **Mitigating Factors** | A mitigating factor is information, used during sanctioning (i.e., *after* a violation has been determined to have occurred), that may decrease the sanction. Some factors may include but are not limited to a student's past conduct record and steps taken to remedy their behavior |
| **Notice** | Written notice of the alleged violations of the Code. Notice will be presumed to have been furnished when the notice is sent to the student's Virginia Tech email address or, when appropriate, provided at a prehearing meeting. |

| TERM | DEFINITION |
| --- | --- |
| Preponderance of the evidence | The Office of Student Conduct uses preponderance of the evidence to determine whether or not a student has violated a policy in the *Student Code of Conduct*. This determination is made based on the information available to determine if it is more likely than not that a violation occurred. |
| Respondent | Any student or student organization alleged to have violated the *Student Code of Conduct*. |
| Student | For the purposes of disciplinary action, a "student" is defined as any individual who has accepted an offer of admission as an undergraduate, graduate, or professional student and who has not yet graduated or officially transferred to another institution. |
| Student Organization | For the purposes of disciplinary action, a "student organization" includes Registered Student Organizations (RSO), Extended Campus Student Organizations (ECSO), and University Chartered Organizations (UCSO), as defined in university policy 8010. |
| University Official | A university official is any person given authority by the university to perform administrative or professional responsibilities, including, but not limited to university police officers, resident advisors, graduate/ teaching assistants, administrative support staff, faculty, etc. |
| University Property or University Facilities | University property or university facilities are any location, either permanent or temporary, owned or leased by Virginia Tech, and includes satellite campuses and offices. This includes, but is not limited to, the buildings, grounds, and the surrounding perimeters, including the parking lots, field locations, classrooms, alternate work or class locations, and university owned or leased vehicles. |
| Witness | A witness is a person who provides relevant information about an incident in a hearing or through a written statement. Character witnesses are not generally considered relevant. |

# V. Prohibited Conduct

## Alcohol and Other Drug Offenses

- <u>Alcoholic Beverage</u>: Improper use of alcohol as defined by the regulations of the Commonwealth of Virginia and the university, including but not limited to underage possession/consumption, public intoxication (regardless of age), providing alcohol to any underage person, or any violation of university alcohol regulations, as outlined in Appendix I.

- <u>Illegal Drugs</u>: Possessing, using, manufacturing, selling, or misusing any substance and/or possession of drug paraphernalia in violation of state or federal law.

- <u>Driving Under the Influence</u>: Operating or attempting to operate a motor vehicle, bicycle, or other personal transportation device while intoxicated or impaired by alcohol or other drugs.

## Offenses Against People

- <u>Abusive Conduct</u>: The use of physical force against an individual or any acts that cause physical harm; threats, including words or actions, that may cause a person reasonable apprehension of imminent physical harm.

- <u>Endangerment</u>: Actions that intentionally or recklessly endanger the health, safety, or well-being of oneself or another person or group.

- <u>Harassment</u>: Unwelcome conduct not of a sexual nature that is sufficiently severe, pervasive, or persistent that it could reasonably be expected to create an intimidating, threatening, or hostile environment that limits the ability of an individual to work, study, or participate in the activities of the university. *Note: the Code also includes a Gender-Based Harassment policy.*

- <u>Hazing</u>: Any mental or physical requirement, request, or obligation placed upon any person for the purpose of admission, initiation, or continued association with a group or organization that could cause discomfort, pain, fright, disgrace, or injury; that is personally degrading; or that violates any federal, state, local statute, or university policy, the willingness of an individual to participate in such activity notwithstanding. Additional information is available in Appendix III.

- <u>Stalking</u>:  Repeated contact of another person not based on gender when the contact is unwanted and may cause the other person reasonable apprehension of imminent physical harm or cause substantial impairment of the other person's ability to perform the activities of daily life. *Note: the Code also includes a Gender-Based Stalking policy.*

- <u>Recording and/or Distribution of Audio/Visual Material Without Consent</u>: Making, attempting to make, sharing, or distributing an audio and/or visual recording of any person(s) without the knowledge and consent of all participants subject to such recordings, in locations where there is a reasonable expectation of privacy, and when the action is likely to cause injury, distress, or damage to one's reputation.

- <u>Gender-Based Violence</u> (these policies apply in cases outside of the jurisdiction of Title IX; for Title IX policy definitions, refer to <u>Appendix II</u>):

  - <u>Sexual Violence</u>: Physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent. Sexual violence includes rape, sexual assault, sexual battery, and sexual coercion.

    - <u>Sexual Assault</u>: Actual or attempted sexual contact with another person without that person's consent.

    - <u>Sexual Battery</u>: Intentional touching of another person's intimate parts without the person's consent; or other intentional sexual contact with another person without that person's consent.

    - <u>Sexual Coercion</u>: Using physical or verbal aggression or pressure to force or attempt to force a person to touch another person's intimate parts without that person's consent.

    - <u>Rape</u>: Penetration, no matter how slight, of (1) the vagina or anus of a person by any body part of another person or by an object, or (2) the mouth of a person by a sex organ of another person, without that person's consent.

  - <u>Gender-based Harassment</u>: Acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, even if those acts do not involve conduct of a sexual nature.

  - <u>Sexual Exploitation</u>: An act or acts committed through non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other non-legitimate purpose. The act or acts of sexual exploitation are prohibited even if the behavior does not constitute one of the other sexual misconduct offenses.

  - <u>Domestic Violence</u>: A pattern of abusive behavior that is used by an intimate partner to gain or maintain power and control over the other intimate partner. Domestic violence can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, or wound someone.

  - <u>Dating Violence</u>: Acts of physical or sexual abuse committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim.

    - The existence of such a relationship shall be determined based on the reporting party's statement and with consideration of the length of the relationship, the type of

> relationship and the frequency of interaction between the persons involved in the relationship.

- Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse, but does not include acts covered under the definition of domestic violence.

‣ <u>Gender-Based Stalking</u>: Repeatedly contacting another person when the contact is unwanted. Additionally, the contact may cause the other person reasonable apprehension of imminent physical harm or cause substantial impairment of the other person's ability to perform the activities of daily life. Contact includes but is not limited to communicating with (either in person, by phone, or by computer) or remaining in the physical presence of the other person.

## Offenses Against Property

- <u>Damage or Destruction</u>: Intentional, reckless, and/or unauthorized damage to, destruction of, tampering with, or vandalism of property.

- <u>Fire Safety</u>: The misuse of or tampering with firefighting equipment, unauthorized burning, disregarding fire alarm signals, deliberately initiating a false alarm or, tampering with fire detection or suppression equipment.

- <u>Theft</u>: Theft, attempted theft, or possession of stolen property.

- <u>Unauthorized Entry</u>: Entering, attempting to enter, or being present in buildings, residences, public or private property, and/or facilities or other areas without proper authority.

## Offenses Against the Community

- <u>Disorderly or Disruptive Conduct</u>: Engaging in disorderly or disruptive conduct that interferes with university, community, or individual activities, including but not limited to studying, teaching, research, and university administration.

- <u>Public Exposure</u>: Any act or attempted act of public nudity or urinating/defecating in public.

- <u>Hazardous Materials</u>: Unauthorized possession or use of fireworks, explosives, or hazardous and potentially hazardous materials.

- <u>Weapons</u>: Unauthorized possession, use, or storage of firearms, ammunition, or weapons on university property at any location, either permanent or temporary, owned or leased by Virginia Tech. Refer to Virginia Polytechnic Institute and State University Policy and Procedures <u>No. 5616</u> for additional information.

## Offenses Against the University

- <u>Failure to Comply</u>: Failure to comply with a request and directives of university officials acting within the scope of their authority, including but not limited to the following: failure of a student to present their university identification card,

failure to keep or attend a required meeting, and failure to leave an area when requested by an authorized university official. Upon the request of the student questioned, university officials must identify themselves and state the source of their authority.

- Furnishing False Information: Knowingly giving false information to a university official who is performing their official duties, including but not limited to perjury in a conduct hearing.

- Interference with University Complaint Processes: Attempting or actively influencing, impeding, intimidating, interfering, coercing, or retaliating against any person involved in a potential, actual, or past student complaint in a formal university complaint process.

- Involvement in a University Violation: Presence during any violation of the *Student Code of Conduct* and/or other university policies in such a way as to condone, support, or encourage that violation. Students who anticipate or observe a violation of university policy are expected to remove themselves from participation and are encouraged to report the violation.

- Visitation/Guest Policies: Students or student organizations will be held responsible for the conduct of their guests and are expected to inform them of all university regulations, including but not limited to Housing and Residence Life policies.

## Other Prohibited Conduct

- Actions Leading to the Conviction of Criminal Offenses: Any student convicted of a criminal offense is subject to university disciplinary action.

- Failure to Observe Rules and Regulations: Failure to observe rules and regulations issued by the university that are not listed specifically as "Prohibited Conduct" in the document, including but not limited to regulations linked above in the "Additional University Policies" and "Additional Community Specific Regulations" sections.

- Forgery or Fraud: Forgery or fraud, including attempts to obtain any item of value under false pretenses, falsification of official university documents, or possession of forged or altered identification or another person's identification.

- Gambling: Participation in any form of illegal gambling.

## Statement on Sanction Enhancements for Policy Violations Motivated by Bias

Any violation of the Virginia Tech Student Code of Conduct found to be motivated by an individual's age, color, disability, sex (including pregnancy), gender, gender identity, gender expression, genetic information, national origin, political affiliation, race, religion, sexual orientation, or veteran status (as stated in Virginia Polytechnic Institute and State University Policy and Procedures No. 1025) will be deemed an aggravating factor and will subject the student to a sanction more severe than would be imposed in the absence of such motivation.

This sanction enhancement will not apply in cases in which protected classes are specifically addressed within the language of the policy, such as gender-based violence or gender-based stalking.

### Statement on Self-Reporting and Bystander Intervention

Virginia Tech recognizes that the health and safety of students is of utmost importance. Therefore, if someone requires assistance for themselves or others because of alcohol or drug use, we want them to call for help. If medical assistance is sought, Student Conduct will not pursue conduct charges against the individual or organization who sought assistance, or the individual in need of assistance. However, Student Conduct will still require students to attend a meeting with a hearing officer to discuss the incident and will assign substance-related and other educational assignments to the involved parties.

Violations having a significant individual or community impact and students with prior violations that demonstrate an actual, potential, or perceived pattern of behavior are not likely to have outcomes that are mitigated and are not likely to be protected under this policy.

### Statement on Reports of Sexual Harassment and Gender-Based Violence and Immunity for Use of Alcohol or Other Drugs

Virginia Tech seeks to remove any barriers to reporting incidents of sexual harassment and gender-based violence. Therefore, any student, whether the complainant or a third party, who makes a good-faith report of sexual harassment or gender-based violence will be immune from disciplinary action for their personal consumption of alcohol or other drugs occurring at the time of the reported incident.

## VI. Additional University Policies

The *Student Code of Conduct* is intended to include other rules, regulations, and policies issued by the university that pertain to students and student organizations. Violations of these policies are actionable under the *Student Code of Conduct* when the violation warrants a process or sanction beyond what is available in these policies. Additional policies include but are not limited to the following:

- Dining Policies
- Housing and Residence Life Policies
- Housing and Dining Contract
- Mail Services Procedures for Receipt of Parcel Packages and Mailings
- Parking and Traffic Regulations
- Student ID Cards
- University-Level Policies (see the university's policy library at policies.vt.edu/policy-library for a full list of policies relevant to students; the following policies are those most frequently referenced):

- Acceptable Use and Administration of Computer and Communications Systems
- Arrest, Conviction, and Protective Order Disclosures
- Bicycles and Personal Transportation Devices
- Campus and Workplace Violence Prevention
- Facilities Usage and Events
- Harassment, Discrimination, and Sexual Assault
- Operation of Unmanned Aircraft Systems
- Sales, Solicitation, and Advertising on Campus
- Serving Alcohol
- Smoking
- Social Media
- University Names and Trademarks

## VII. Student Conduct Process

The Office of Student Conduct uses the following procedures to address behavior that is alleged to have violated university policy. It should be noted that not all situations are of the same severity or complexity. Thus, these procedures are flexible and are not exactly the same in every situation, though consistency in similar situations is a priority. The procedures used in particular cases are determined at the sole discretion of the Office of Student Conduct.

The university conduct process is an administrative function and differs from civil or criminal legal proceedings. In some situations, students may be involved in both legal and university systems.

### Step 1: Submitting a Conduct Referral/Complaint

Any student, faculty member, staff member, administrator, community member, or concerned party may submit a complaint, known as a "conduct referral," to the Office of Student Conduct. While there is no time limit for referrals, Student Conduct encourages people who plan to bring a complaint against a Virginia Tech student to do so as quickly and prudently as possible.

Student Conduct will review the conduct referral to determine if there is information regarding behavior that may violate the *Student Code of Conduct* and thus warrants resolution within the conduct system.

This review may include a meeting with the person(s) who submitted the complaint and/or an investigation to gather additional information.

Potential outcomes of the review include the following:

- A determination that interim measures or administrative actions should be imposed in order to maintain safety or order.

- A determination that an investigation is needed to gather additional information to identify an appropriate avenue for resolution.

- A determination that the matter should be referred to another office or process.

- A determination that there may be a potential violation of the *Student Code of Conduct* and that an agreed resolution is the appropriate avenue for resolution.

- A determination that there may be a potential violation of the *Student Code of Conduct* and that a formal hearing is the appropriate avenue for resolution.

- A determination that the complaint may not involve a potential policy violation but is related to a conflict; in this case, Student Conduct may offer voluntary mediation, facilitated dialogue, or conflict coaching.

- In some cases, at Student Conduct's discretion, students will be invited to participate in an educational conversation about the concerns raised in the complaint, even when Student Conduct determines that adjudication is not appropriate.

- A determination that there is insufficient information to pursue the complaint.

- A determination that the behavior alleged, even if proven, would not violate the *Student Code of Conduct*.

<u>Formal Complaints of Sexual Harassment and Gender-Based Violence</u>

Formal complaints of sexual harassment and/or gender-based violence should be reported to the university's Title IX Coordinator. They will follow the steps detailed in Virginia Tech's Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence (INSERT LINK) to offer supportive measures and to determine whether a complaint falls within the scope of Title IX, as defined by the federal Department of Education, or under the policies in Virginia Tech's *Student Code of Conduct*.

Complaints that have been determined to fall under the policies in the *Student Code of Conduct* will be referred to the Director of Student Conduct. Per the process outlined above, the Director will review the complaint and, if appropriate, may request the Office for Equity and Accessibility conduct a thorough, impartial investigation into the complaint. Upon completion of an investigation, the Director will determine how the matter should be resolved.

## Step 2: Resolution

After reviewing a conduct referral, Student Conduct will determine an appropriate resolution process from among the following:

<u>Agreed Resolution</u>: An agreed resolution is an informal resolution option in which the respondent meets with a hearing officer to discuss an incident and collaborates with the hearing officer to determine whether they violated a policy and, if so, what sanctions may be appropriate. If the respondent agrees to the resolution, they waive the right to a formal hearing, and the resolution is final. If an agreement cannot be reached, the respondent has the option to move forward to a formal hearing with a new hearing officer.

Formal Hearing: In a formal hearing, the hearing officer(s) determines whether the respondent violated policies in the *Student Code of Conduct*, along with appropriate sanctions, if necessary. In formal conduct hearings, the respondent is entitled to the following procedural guarantees and opportunities:

- To receive written notice of charges at least five (5) business days in advance of the hearing and in reasonable detail to allow the respondent to prepare for the hearing.

- To share their version of events and refute any information presented.

- To present witnesses/witness statements and question any witnesses present.

- To remain silent or not participate.

- To be accompanied by an advisor.

- To challenge the objectivity of a hearing officer(s), given reasonable cause to believe that they may be biased or have a conflict of interest.

- To appeal if there is a loss of privilege (i.e., suspension, dismissal, denial of housing, etc.), provided there are appropriate grounds as found in the Student Conduct Formal Hearing Appeals section.

In addition to witnesses who may be called by respondents participating in formal hearings, hearing officers may also call witnesses whom they believe are relevant for determining outcomes in a given case. The outcome of a formal hearing is final unless it qualifies for appeal, as outlined in the Formal Hearing Appeals section. If a respondent or complainant fails to attend a formal hearing after receiving proper notice, the case may be heard in their absence.

Formal Title IX Adjudication and Gender-Based Violence Hearings: Cases referred for adjudication by the Title IX Coordinator for a formal Title IX hearing are conducted in accordance with the policies and procedures outlined in Appendix II, as required by the U.S. Department of Education.

Gender-based violence cases that fall outside of the jurisdiction of Title IX are adjudicated through the gender-based violence policies and formal hearing process outlined by the *Student Code of Conduct,* as described above. These formal hearings are conducted by a team of two hearing officers. In these hearings, both the complainant and respondent receive the same procedural guarantees outlined above, and both parties may appeal, regardless of the outcome. Appeals must be based on appropriate grounds.

Adaptable Conflict Resolution (ACR): When complaints/referrals to Student Conduct are based in conflict between individuals or groups, Student Conduct may offer adaptable conflict resolution (ACR) options to students, including mediation, facilitated dialogue, or conflict coaching. Participation in ACR is optional, and in the case of mediation or facilitated dialogue, all parties must agree to participate. ACR options may result in a mutually satisfactory agreement between the parties, but it is not required.

Educational Conversation: An educational conversation is a discussion between a student and hearing officer in Student Conduct regarding behavior that does not rise to the level of a policy violation but is, nevertheless, inappropriate or having a negative impact on the

student or others or, if it continues, may become a policy violation. These conversations are educational and supportive in nature and are intended to help the student reflect and to connect them with resources, when needed.

### Additional Information

<u>Standard of Proof</u>

The preponderance of the evidence standard will be used to determine responsibility for violations of policies in the *Student Code of Conduct*. Preponderance of the evidence means that based on the information available to determine if it is "more likely than not" that a violation occurred.

## VIII. Sanctions

Student Conduct sanctions are designed to promote safety, individual accountability, and reflection. Whenever possible, Student Conduct makes efforts to educate students and to foster personal and academic success. When assigning sanctions, hearing officers consider the type and nature of any policy violation(s), including mitigating or aggravating factors, as well as the student's prior conduct record. Sanctions are generally cumulative in nature. One or more of the following sanctions may be imposed when a student or student organization is found responsible for violating the *Student Code of Conduct*:

| SANCTION | DESCRIPTION |
|---|---|
| Formal Warning | A formal written notice that the student or student organization has violated a policy in the Student Code of Conduct and that further violations may result in more serious conduct action. Students or student organizations who receive a formal warning are still considered in good conduct standing with the university. |
| Probation | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Further violations during that time period may result in more serious conduct action, including a potential separation from the university. |
| Deferred Suspension | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Violations for which deferred suspension is assigned are those that are serious enough to warrant suspension from the university, but due to mitigating factors, the student or student organization is given the opportunity to remain enrolled at the university, provided they do not violate further policies. The suspension may take effect if they violate additional policies during the period of deferred suspension. |

| SANCTION | DESCRIPTION |
|---|---|
| Suspension | A specified period of time during which the student or student organization is separated from the university. During the suspension period, the student does not have the rights and access to privileges associated with being a student, which includes eligibility to be academically enrolled at Virginia Tech or transfer credits earned at other institutions during the period of disciplinary suspension. For student organizations, the university will withdraw recognition for the duration of the suspension. A student or student organization must complete all assigned sanctions and receive permission from Student Conduct to be eligible to re-enroll. For a student who has completed their academic work but whose degree has not yet been conferred, their degree may be withheld for the duration of the suspension period. |
| Deferred Dismissal | A specified period of time during which the student or student organization is considered not in good conduct standing with the university. Violations for which deferred dismissal is assigned are those that may warrant permanent dismissal, or expulsion, from the university, but due to mitigating factors, the student is given the opportunity to maintain student status with the university, provided they do not violate further policies. The dismissal may take effect if the student violates additional policies during the period of deferred dismissal. A deferred dismissal is often accompanied by a suspension or other conduct sanctions. |
| Dismissal | A formal notice that the student or student organization is permanently dismissed, or expelled, from the university, with no opportunity to re-enroll. For student organizations, the university permanently withdraws recognition. |
| Denial of Privileges or Associations | A specified period of time during which the student is denied certain privileges or associations, including but not limited to termination of the housing contract, removal from athletic events, loss of recreational sports privileges, network access, or access to certain university facilities. Student organizations may also have their social function privileges revoked. |
| Restitution | Requirement for the student to make restitution for damage to university property, which, at the discretion of Student Conduct and the associated university department, may be in the form of monetary payment or community service. |
| Educational, Community, and Wellness Activities | Assignments or activities designed to provide opportunities for reflection, learning, and growth as well as to connect the student with resources to support their well-being and personal and academic success. |

## Failure to complete sanctions

Students are expected to complete their conduct sanctions, including educational sanctions, within the timeframe and guidelines specified by their hearing officer. Failure to complete sanctions may result in additional conduct action and sanctions.

## IX.  Formal Hearing Appeals

The respondent has the opportunity to appeal the outcome of a formal hearing if it results in a loss of privilege, including suspension, dismissal, or denial of certain university privileges, including but not limited to housing, network access, or athletic privileges. For gender-based violence hearings, both the complainant and respondent have the opportunity to appeal, regardless of the outcome of the hearing and whether or not there is a loss of privilege. Sanctions take effect immediately, pending the appellate officer's decision or the end of the appeal period.

The appeal process for formal Title IX hearings is outlined in Appendix II.

### Grounds for appeal

Appeals are not re-hearings; therefore, appeal requests are limited to the following grounds:
1. Denial of procedural guarantees
2. Significant and relevant new information that was not available at the time of the hearing
3. Unduly harsh or arbitrary findings or sanctions.

Appeals submitted that do not have sufficient grounds in one of these areas will be denied.

### Potential Outcomes of an Appeal

The appellate officer will review the appeal and may:
1. Uphold the original decision and sanctions
2. Uphold the original decision and either decrease or increase the sanction
3. Vacate a finding
4. Send the case back to Student Conduct for a new partial or full hearing.

### Timeframe to submit an appeal

The respondents (and complainants, in the case of gender-based violence hearings) have seven (7) business days from the date of the decision to submit the appeal. The date the decision is given is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by Student Conduct.

### Format of appeal

The appeal is a written request submitted by the student for a review of the original case. The student should include which grounds for appeal they believe apply and any information the student wants considered should be included in the written document. The burden is on the appealing student or student organization to demonstrate why the finding or sanction should be altered.

**Appellate Officers**

An appellate officer will be designated by the Assistant Vice President for Student Affairs, who serves as the university's Chief Appellate Officer. All appellate officers are external to the Office of Student Conduct.

## X. Interim Measures and Administrative Actions

Based on the nature and circumstances of the referral, the university may authorize interim measures or take administrative action to maintain safety and order and to ensure compliance with university processes and directives, including the following:

<u>Holds on Student Account</u>: Student Conduct may apply a hold on a student's account, which will prevent course registration, graduation, and access to transcripts. Situations in which holds may be applied include but are not limited to the following:

1. The student fails to complete sanctions by assigned deadlines
2. The student has been issued an interim suspension
3. The student is suspended and has a pending re-enrollment meeting
4. The student has a pending conduct matter that must be resolved

<u>Interim Suspension</u>: The university retains the authority to impose an interim (immediate) suspension from the university and/or selected campus facilities with proper notice if such action is necessary to preserve the safety of persons or property. During an interim suspension, a student may not participate in academic, extracurricular, or other activities of the university except as may be authorized by the Assistant Vice President for Student Affairs or their designee. In this instance, the students will be afforded an interim suspension meeting and the opportunity to show why their continued presence on campus does not constitute a threat to themselves, others, or property. The interim suspension meeting is separate from the student conduct process. The student will have five (5) business days within which to request an interim-suspension meeting. An opportunity to meet with Student Conduct for a final resolution will be provided as soon as possible.

- <u>Procedures</u>*:* The following steps explain the procedure for imposing an interim suspension:

  - ▸ <u>Initiating an Interim Suspension</u>: When a situation, as defined above, occurs, the responding university official contacts the Threat Assessment Team or the Assistant Vice President for Student Affairs or their designee to assess the situation and determine if an interim suspension is appropriate.

  - ▸ <u>Notification of an Interim Suspension</u>: The student will be sent an interim suspension letter immediately, which states that the student is either suspended from the university and/or suspended from all or selected campus residential facilities until a final resolution is determined through the Student Conduct process.

  - ▸ <u>Interim-Suspension Meeting</u>: The student can immediately request an interim suspension meeting to be conducted by the Assistant Vice

President for Student Affairs or his/her designee. The interim suspension letter will contain instructions on how to request a review. Those present at the meeting may include the responding university official and other witnesses as deemed appropriate by the Assistant Vice President for Student Affairs. During the review, the student will be given an opportunity to demonstrate why his or her continued presence on campus does not constitute a threat to themselves, others, or property. As part of the review, the student may be required to submit to an immediate medical/psychological evaluation. The student will be evaluated by the director of the Cook Counseling Center or his/her designee.

▸ Timeframe to Request Interim-Suspension Review: A student must request a meeting within five (5) business days; after that time frame, the interim suspension and/or suspension from campus residential facilities and all student activities will remain in effect until the matter is resolved through the student conduct process.

▸ Decision: The decision made after the interim suspension meeting will be final. There will be no additional appeal.

▸ Student Conduct Process/Resolution: Interim suspension information will be shared with Student Conduct and others who need to know. Student Conduct will determine and schedule, as soon as possible, the appropriate resolution process to determine whether the student is responsible for violating university policy and, if so, appropriate sanctions.

No Contact Order: In certain situations, Student Conduct may issue no contact orders to students for a period of time to prevent communication between two or more students if it is determined that contact between the parties may perpetuate or escalate behavior that may interfere with a person's rightful actions, including but not limited to their safety and security. No contact orders prevent students from face-to-face, electronic, or third-party contact. If a no contact order is issued, all parties involved will receive the order.

A student who violates a no contact order may be subject to conduct action; if a violation of the order threatens the safety of persons or property, an interim suspension may be imposed.

The process for no contact orders includes the following:

1. No contact orders may be requested by students, or Student Conduct may issue them independently of a request.

2. Before issuing an order, Student Conduct may request additional information to determine whether it is warranted.

3. Student Conduct may decline to issue an order.

4. A student who has requested an order be issued may subsequently request that it be lifted.

5. Student Conduct has the discretion to lift a no contact order at any time if it is determined that the circumstances under which it was issued are no longer present.

Cease Operations Order: In certain situations involving allegations of policy violations by student organizations that may involve potential impacts on the safety of persons or property or significant disruption to the community, Student Conduct may issue a cease operations order, which places restrictions on the organization while the matter is resolved. Examples of situations in which cease operations are issued include but are not limited to the following: hazing; alcohol distributed to underage members or guests; and disorderly or disruptive behavior, such as serious or ongoing violations of noise regulations in the Town of Blacksburg. The cease operations will remain in place until the matter is resolved by Student Conduct. Cease operations restrictions may include but are not limited to the following:

1. The organization is to stop operating in full, including meetings, communication, events, etc.

2. The organization is to stop hosting events with alcohol present.

3. The organization is to stop recruitment or holding meetings, events, or activities with new or prospective members.

## XI. Student Conduct Records

Violations of the *Student Code of Conduct* are maintained in a student's conduct record for a period of five years from the date of the incident. This record is maintained electronically by the Office of Student Conduct and is separate from a student's academic transcript, though it is considered part of a student's educational record.

Records of formal Title IX hearings will also be maintained by the Office for Equity and Accessibility for a period of seven years, as described in the Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence (INSERT LINK).

Student conduct cases involving student organizations are not private. Accordingly, hearing notification and sanction letters are sent to organizational advisors and (inter)national headquarters.

### Information Sharing within the University

Notification of student conduct outcomes or decisions is given to individuals in the university with a need to know. Other university agencies or organizations may be required to obtain a written release from students before they can receive notification.

### Notification to Victims of Crimes of Violence

Victims of crimes of violence (including abusive conduct and gender-based violence) involving student respondents will be notified of the outcome and sanction(s). In Title IX matters, complainants will also be notified of the outcome and relevant sanctions for non-violent violations of gender-based violence policies.

## Parental Notification

Parents/guardians of students under age 21 will be notified if their student is found responsible for a violation of the alcoholic beverage or illegal drug policies.

## Student Conduct Transcript Notations in Cases of Suspension and Dismissal

When a student is suspended or permanently dismissed from Virginia Tech, a notation will be included on the student's academic transcript stating, "suspended [or dismissed] for a violation of the Student Code of Conduct." Suspension notations will be removed once the student completes the term and conditions of the suspension, including all assigned sanctions. In cases involving allegations of gender-based violence, a notation will also be placed on the transcript of a student who withdraws from Virginia Tech while under investigation. This notation will be removed if the student is subsequently found not responsible for violating policies in the *Student Code of Conduct*. Students may also petition to have transcript notations expunged, as outlined in the following section.

Lesser sanctions, such as warnings and probation, do not affect a student's academic standing and do not appear on the official transcript.

## Petitions for Expungement

The university offers two opportunities for students to petition for expungement of documentation related to their disciplinary record:

1. In cases involving low-level violations of the *Student Code of Conduct*, such as cases in which a student received probation, the student may petition the Office of Student Conduct to have the record of that case expunged prior to the end of the five-year period (early record expungement).
2. In cases involving sanctions of suspension or permanent dismissal resulting in a notation on the academic transcript, the student may petition the Office of Student Conduct to have the notation on their academic transcript expunged. Expungement of the notation is not the same as expungement of the entire case record.

The process and timeline for each opportunity is outlined below.

1. Early Record Expungement for Low-Level Policy Violations: Students or graduates may petition Student Conduct to have the documentation of their cases involving low-level policy violations, such as those resulting in probation, "expunged" from their conduct record prior to the end of the five-year period. "Expungement" in this situation means that while the record is maintained by Student Conduct, per state and federal law, the record will not be shared with third parties, except as required by law. For example, a student applying to transfer to another institution may need to obtain a certified copy of their disciplinary record as part of an admissions application; if a record has been expunged, the documentation provided for the application will not include information about that incident.

The opportunity to request expungement reflects the student-centered and learning-focused values on which the Student Conduct process is based. Namely, we believe that students can learn and grow by reflecting on their decisions and examining their values.

Cases involving more serious violations of policy and more significant sanctions may not be considered for early record expungement, including but not limited to the following cases: those resulting in suspension or dismissal, gender-based violence and gender-based stalking, drug distribution, or other offenses against people.

An early record expungement applies only to records maintained by the Office of Student Conduct; records maintained by other offices or units, such as law enforcement and other university departments are not subject to expungement under this process.

Eligibility: A student may petition to have cases expunged from their conduct record in the following circumstances:

- An undergraduate student is classified as a senior, is not on an active status sanction (e.g., probation), and has completed all assigned educational sanctions.

- An undergraduate student is classified as a freshman, sophomore, or junior, has been off of an active sanction (e.g., probation) for at least one full semester (i.e., fall or spring), and has completed all assigned educational sanctions.

- A graduate or professional student is not on an active status sanction (e.g., probation) and has completed all assigned educational sanctions.

2. Transcript Notation Expungement for Cases Involving Suspension or Dismissal:
A student or former student may petition for a transcript notation to be expunged–or removed–from the academic transcript after a period of three years from the final resolution of the case if the student can show good cause. In cases involving suspension, the student must have completed the term of the suspension and all educational sanctions prior to submitting their petition. The Office of Student Conduct will work with former students who have outstanding educational sanctions to determine options, which could include alternate sanctions that are mutually agreed upon, for fulfilling sanction requirements so that the individual may petition to have the transcript notation expunged.

Expungement of the transcript notation is not the same as expungement of the entire case record.

Evaluation of Expungement Petitions
The Director of Student Conduct or their designee will review petitions for early record expungements as well as transcript notation expungements based on the criteria above and will submit a recommendation to the Assistant Vice President for Student Affairs or their designee for final approval.  The decision will be based upon the following criteria, as outlined in the petition application available on the Student Conduct website:

1. The nature of the violation(s) and the resulting impacts

2. The student's behavior after the violation(s) and their present demeanor

3. The student's demonstrated level of reflection and growth

After a petition is evaluated, the student will receive written notification of the decision. That decision will be final.

It is important to note that a student with an expunged record or transcript notation may still need to disclose information about their disciplinary history to third parties, including potential employers, other universities' admissions offices, a professional board, etc.

# XII. Appendices

### Appendix I: Additional Policies and Procedures Governing the Use of Alcoholic Beverages

Virginia Tech recognizes that the misuse and abuse of alcohol is a persistent social and health problem in our society and that it interferes with the goals and objectives of any educational institution. The university fully complies with the alcohol regulations of the Commonwealth of Virginia, and all state laws apply to Virginia Tech students and student organizations. Students or student organizations who violate the Alcoholic Beverage Policy in the *Student Code of* Conduct and any associated policies or guidelines will face disciplinary action. Sanctions will likely include substance-related education.

In compliance with the laws of the Commonwealth, and to maintain conditions conducive to learning, possession or consumption of alcoholic beverages on campus is only permitted according to the following provisions:

| LOCATION | DESCRIPTION |
|---|---|
| Residence hall room | In the privacy of a student room, alcoholic beverages are permitted for those persons 21 years of age or older in accordance with state law, provided that at least one of the 21-year-old residents of the room is present. |
| Other locations in residence halls | Aside from the privacy of a student's room, possession or consumption of alcoholic beverages in any area of residence halls, including suite living rooms, is forbidden. |
| Oak Lane | The Director of Fraternity and Sorority Life, in conjunction with the Director of Housing and Residence Life, determines regulations concerning the use of alcoholic beverages in the "Oak Lane Community" (also known as Special Purpose Housing) during events. |
| Corps of Cadets | The Commandant of Cadets establishes and publishes regulations to be observed by cadets regarding the possession and consumption of alcoholic beverages. This information is published in the Cadet Regulations Manual. |
| All residential locations | Kegs of any description in student rooms or residence halls, including Oak Lane, are prohibited. |

| All other university property | The possession and use of alcoholic beverages is prohibited on all other university property except in certain facilities that are fully registered with the Virginia Alcoholic Beverage Control Board (ABC). |
|---|---|

Alcoholic beverages are further governed by Virginia Polytechnic Institute and State University Policy and Procedures No. 1015.

For more information related to federal and state laws and regulations regarding alcohol or illegal drugs or prevention and substance-use programs available at Virginia Tech, please consult the university's Drug and Alcohol Prevention Program document.

## Appendix II: Title IX Definitions and Formal Title IX Adjudication Process

The process for formal Title IX complaints, including definitions of terms and policies, reporting, investigations, and adjudication, is outlined fully in the university's Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence (INSERT LINK). The following excerpts include the policy definitions under Title IX, as well as the formal Title IX adjudication process for students, which is conducted by the Office of Student Conduct.

### Title IX Definitions

Complainant means an individual who is alleged to be the victim of conduct that could constitute Title IX Sexual Harassment.

Consent means knowing, voluntary, and clear permission by word or action, to engage in mutually agreed upon sexual activity. The existence of consent is based on the totality of circumstances, including the context in which the alleged consent occurred. Silence does not necessarily constitute consent and coercion, force, or threat of either party invalidates consent.

- Consent cannot be given where a person is incapacitated due to drugs or alcohol; or where a person has a disability; or is not of legal age to consent as defined by law.
- Consent to any one form of sexual activity cannot automatically imply consent to any other forms of sexual activity. Consent can be withdrawn at any time.
- Previous relationships or prior consent cannot imply consent to future sexual acts.

Dating Violence means violence committed by a person: (a) who is or has been in a social relationship of a romantic or intimate nature with the victim; and (b) Where the existence of such a relationship shall be determined based on a consideration of the following factors: (1) the length of the relationship; (2). the type of relationship; and (3) the frequency of interaction between the persons involved in the relationship.

Domestic Violence means felony or misdemeanor crimes of violence committed by: (a) a current or former spouse or intimate partner of the victim; (b) a person with whom the victim shares a child in common; (c) a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner; (d) a person similarly situated to a spouse

of the victim under the domestic or family violence laws of Virginia; or any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of Virginia.

<u>Respondent</u> means an individual who has been reported to be the perpetrator of conduct that could constitute Title IX Sexual Harassment.

<u>Sexual Assault</u> means misconduct that meets the definition of Rape, Fondling, Incest, or Statutory Rape, as defined below:

- <u>Rape</u> means penetration, no matter how slight, of the vagina or anus of a person with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

- <u>Fondling</u> means the touching of the private body parts of another person for the purpose of sexual gratification, without the consent of the victim, including instances where the victim is incapable of giving consent because of age or temporary or mental incapacity.

- <u>Incest</u> means sexual intercourse between persons who are related to each other within degrees wherein marriage is prohibited by law.

- <u>Statutory Rape</u> means sexual intercourse with a person who is under the statutory age of consent.

<u>Stalking</u> means engaging in a course of conduct directed at a specific person that would cause a reasonable person to: (a) fear for the person's individual safety or the safety of others; or (b) suffer substantial emotional distress.

**Formal Title IX Adjudication Process**

When the Title IX Coordinator refers a case for formal adjudication, the Office of Student Conduct will hold a live hearing with cross examination to determine whether the respondent is responsible for the alleged conduct and to provide appropriate sanctions, as appropriate.

### A. Procedural Guarantees

In formal conduct hearings for Title IX formal complaints, the complainant and respondent are entitled to the following procedural guarantees and opportunities:

- To receive a copy of the final investigation report, including any attachments and supporting documents from the Title IX Coordinator or designee at least ten (10) days in advance of the hearing.
- To receive written notice of the date, time, location, participants, and policies charged at least five (5) business days in advance of the hearing to allow the parties sufficient time to prepare for the hearing.
- To be accompanied by an advisor of their choice, at their own cost, or to have an advisor provided to them by the Office of Student Conduct without fee or charge.
- To inspect and review, during the hearing, all evidence obtained during the investigation that is directly related to the allegations in the formal complaint.
- To present that evidence that supports or refutes the alleged conduct.*
-

- To present witnesses, including fact and expert witnesses.
- To have their advisor conduct live cross-examination on the other party and any witnesses.
- To remain silent or to participate as they see fit, including full, partial, or no participation; however, they should carefully review the section on cross-examination, below, to understand the potential impacts should they choose to limit participation.
- To challenge the objectivity of a hearing officer(s), given reasonable cause to believe they may be biased or have a conflict of interest.
- To appeal, regardless of the outcome, based on the following grounds: 1) Procedural irregularity; 2) Significant and relevant new information that was not available at the time of the hearing; 3) The Title IX Coordinator, Investigator, or hearing officer(s) had a conflict of interest or bias, which affected the outcome; 4) Unduly harsh or arbitrary findings or sanctions.

 *Only evidence and information submitted prior to the final investigation report will be considered during at the hearing.

## B. Advisors

At the hearing, each party may be accompanied by an advisor of their choice, at their own cost (e.g., parent, friend, attorney, etc.); if a party does not have an advisor, the university will provide one to them without fee or charge for the purposes of cross-examination. Advisors may not also serve as witnesses.

Advisors will be permitted to cross-examine (i.e., ask relevant questions and follow-up questions) the other party and any witnesses directly, orally, and in real time. The parties must use their advisors in this capacity, as they will not be permitted to ask questions personally.

Aside from cross-examination, advisors may not speak on the student's behalf or participate actively in the process.  Advisors must follow the guidance of the hearing officers.

## C. Cross-Examination

During the hearing, the parties' advisors will be permitted to ask relevant questions and follow-up questions, including those challenging credibility, of the other party and any witnesses. Cross-examination must be conducted directly, orally, and in real time.  At no times will the parties directly conduct cross-examination.

Relevance

Questions asked during cross-examination must be relevant to the behavior and situation in question.  Hearing officers will determine whether each question is relevant and, if they choose to exclude a question, explain why it is not relevant.  The following topics/questions have been identified as automatic exclusions:

Questions or information about the complainant's prior sexual behavior, unless they are used to prove someone other than the respondent committed the alleged conduct or if they concern previous sexual activity with the respondent and are used to prove consent.

Questions or information that disclose or seeks to disclose privileged information, such as medical or psychological records.

For more information about relevant information, please refer to the Relevant Evidence section in the Title IX Reporting and Grievance Procedures for Sexual Harassment and Violence (INSERT LINK).

Declining to Participate in Cross-Examination

If a party or witness declines to be cross-examined during the hearing, the hearing officers will not consider any statements made by that party or witness during the investigation or hearing when determining whether the respondent is responsible for the alleged conduct. However, the hearing officers will also not draw conclusions regarding responsibility based solely on a party's or witness's absence from the hearing or decision to decline to answer questions from the hearing officers or during cross-examination.

## D. Recording

The Office of Student Conduct audio records all formal hearings. A copy of the recording is maintained as part of the case file and will be made available to the parties, upon request.

## E. Hearing Location and Virtual Participation

At the discretion of the Office of Student Conduct, a hearing may be conducted in a single physical location, with all parties present, or a hearing may be conducted virtually, with participants appearing via videoconference. If the hearing is held in person (i.e., in a single physical location), either party may request to be located in a separate room and to participate via video conference.  Regardless of the participation method, the hearing participants will be able to simultaneously see and hear each other.

## F. Determination of Responsibility

After the hearing, a determination of whether a respondent is responsible for violating any policy in the *Student Code of Conduct* will be made by the hearing officers based on the information presented in the investigation report and at the hearing.

Standard of Proof

The university uses preponderance of the evidence to determine whether or not the respondent is responsible for the alleged conduct.  This determination is made based on the information available to determine if it is more likely than not that a violation occurred.

Decision Letter

The hearing officer will simultaneously provide the parties the decision in writing. The decision letter will include the following information: allegations and policies charged, procedural steps taken during the grievance procedure, information used to determine the findings and their application to the policies charged, rationales for each finding, any sanctions imposed on the respondent, any remedies provided to the complainant, and information about the appeal process.

**Range of Possible Sanctions**

If a respondent is found responsible for the alleged conduct, the hearing officers will make a determination regarding appropriate sanctions. One or more of the following sanctions may be imposed:

- Formal warning
- Probation
- Deferred Suspension
- Suspension
- Deferred Dismissal (i.e., deferred expulsion)
- Dismissal (i.e., expulsion)
- Denial of privileges or associations
- Educational, Community, and Wellness Activities

When assigning sanctions, hearing officers consider the type and nature of any policy violation(s), including mitigating or aggravating factors, as well as the student's prior conduct record. Sanctions are generally cumulative in nature.

For definitions and additional information about sanctions in the Student Conduct process, please refer to the *Student Code of Conduct*.

**Remedial Action**

Following a hearing, the Director of Student Conduct shall work with the Title IX Coordinator, who will oversee any necessary remedial action to restore or preserve the complainant's equal access to the university's education programs or activities.

**Appeal Process**

Both parties have the opportunity to appeal the outcome of a formal hearing in a Title IX case regardless of the outcome. Sanctions take effect immediately, pending the appellate officer's decision or the end of the appeal period.

### A. Grounds for Appeal

Appeals are not re-hearings; therefore, appeal requests are limited to the following grounds:

- Procedural irregularity or denial of procedural guarantees
- Significant and relevant new information that was not available at the time of the hearing
- Conflict of interest or bias by the Title IX Coordinator, Investigator, or hearing officer(s), which affected the outcome
- Unduly harsh or arbitrary findings or sanctions.

Appeals submitted that do not have sufficient grounds in one of these areas will be denied.

**B. Potential Outcomes of an Appeal**

The appellate officer will review the appeal and may:

- Uphold the original decision and sanctions
- Uphold the original decision and either decrease or increase the sanction
- Vacate a finding
- Send the case back to the Title IX Coordinator for further investigation
- Send the case back to Student Conduct for a new partial or full hearing

**C. Time Frame to Submit an Appeal**

The parties have seven (7) business days from the date of the decision to submit the appeal. The date the decision is given is considered the first day of the appeal period. Appeals submitted after the deadline will not be accepted except in extenuating circumstances, as determined by Student Conduct.

**D. Format of Appeal**

The appeal is a written request submitted by the student for a review of the original case. The student should include which grounds for appeal they believe apply, and any information the student wants considered should be included in the written document.  The burden is on the appealing party to demonstrate why the finding or sanction should be altered.

**E. Notification to the Other Party**

When one party submits an appeal, the Office of Student Conduct will notify the other party and provide them with an opportunity to review the appeal and submit a written statement in response, which will be included in the appeal documentation.

**F. Appellate Officers**

An appellate officer will be designated by the Assistant Vice President for Student Affairs, who serves as the university's Chief Appellate Officer. All appellate officers are external to the Office of Student Conduct and Title IX.  When they are designated to review a case, the Assistant Vice President will ensure they do not have conflicts of interest or bias and are, therefore, able to review the case objectively.

**G. Appeal Decision Letter**

The appellate officer will issue a decision on the appeal in writing to both parties simultaneously.  This notification will include a rationale for the decision.

**Appendix III: Additional Information Regarding the Hazing Policy**

Hazing is a criminal offense in the Commonwealth of Virginia, as defined in § 18.2-56 in the Code of Virginia, and is prohibited at Virginia Tech in all forms. This policy is based on the proposition that students are entitled to be treated with consideration and respect at all times. It applies to all student organizations and individuals.

The *Student Code of Conduct* defines hazing as follows:

> *Any mental or physical requirement, request, or obligation placed upon any person that could cause discomfort, pain, fright, disgrace, or injury; that is personally degrading; or that violates any federal, state, or local statute or university policy, the willingness of an individual to participate in such activity notwithstanding.*

Hazing shall include, but not be limited to, forcing, compelling, requiring, encouraging, or expecting, whether direct or implied, any individual to participate in any of the following actions or activities. Hazing also includes soliciting, directing, aiding, or otherwise participating actively or passively in these acts:

- Physical Acts

  - Encouraging or requiring persons to consume alcohol or other substances regardless of the age of the participant.

  - Encouraging or requiring that a person do or submit to any act that will alter his or her physical appearance in any significant degree for any substantial period of time (e.g. burning, branding, tattooing, using makeup, paint or markers on a person, or shaving the head or body).

  - Encouraging or requiring activities that disrupt a person's normal schedule. A normal schedule includes three reasonably spaced meals per day, the opportunity for sufficient rest at night (at least six full hours) and reasonable time for personal hygiene.

  - Encouraging or requiring a person to engage in physical activity of unusual kind or duration, such as: calisthenics, overly difficult work assignments, activities that may be excessive for a person, activities that require a person to remain in a fixed position for an extended period of time, binding or restricting an individual in any way that would prohibit them from moving on their own, confining a person or exposing participants to uncomfortable elements like in environments that are too hot, cold, noisy, small, or threatening/intimidating.

  - Hinting, pretending, or misleading a prospective member into believing that they will be hit, hurt, or physically altered.

  - Encouraging or requiring acts that are or seem to be dangerous.

- Psychological Acts

  - Encouraging or requiring a person to pretend to or actually violate a law.

  - Encouraging or requiring an individual to obtain or possess items or complete tasks in an unlawful manner (i.e. for a scavenger hunt).

- Verbally abusing prospective members. Examples include but are not limited to yelling or screaming; calling individuals demeaning names; booing, hissing, or demeaning individuals when they make mistakes.

- Encouraging or requiring a person to perform acts of servitude, perform personal errands for others, or engage in activities that are demeaning.

- Misleading prospective members in an effort to convince them that they will not become members unless they complete tasks, follow instructions, or act in a certain way.

- Misleading prospective members into believing that they will be hurt during induction or initiation.

- Encouraging or requiring a person to publicly carry objects or wear apparel that is abnormal, not normally in good taste, conspicuous and/or indecent.

- Encouraging or requiring a person to appear nude or reveal body parts.

- Encouraging or requiring an individual or group to remain in a certain place or transporting them to a location without their knowledge (e.g. taking a person on a road trip or excursion to an unknown destination or kidnapping).

- Parading individuals in public areas, transporting individuals in a motor vehicle while blindfolded, or privately conducting blindfolding activities that serve no constructive purpose.

- Requiring an individual to "pledge" or "associate" for a period of unusual length (more than 10-12 weeks) for reasons other than achieving academic requirements or extraordinary circumstances.

As it is impossible to anticipate every situation that could involve hazing, this list does not, and cannot, encompass every circumstance that will cause the institution to discipline for hazing. This policy is not intended to prohibit the following conduct:

- Customary athletic events, contests, or competitions that are sponsored by the institution or the organized and supervised practices associated with such events.

- Any activity or conduct that furthers the goals of a legitimate educational curriculum, extracurricular program or military training program, as approved by the institution.

**Note: An individual may not consent to being hazed, and their voluntary or willful participation in hazing activities will not be considered as a defense against a violation of the institution's hazing policy by an individual or organization.**

University Reporting, Investigation, and Adjudication: The university encourages individuals to report any potential hazing activities. The initial report of a suspected violation may be reported in person, by phone or by electronic communication, and may be done anonymously.

Alleged violations of this policy can be reported through an online reporting system or to the following offices:

- Student Conduct
- Student Engagement and Campus Life
- Fraternity and Sorority Life (for Greek organizations)
- Recreational Sports (for club sports)
- Virginia Tech Police Department
- Virginia Tech Corps of Cadets

Credible and sufficiently detailed reports of hazing will be referred to Student Conduct for further investigation and potential adjudication. Both individuals and organizations may be held responsible for their actions and participation in incidents of hazing. If an investigation concludes that an individual or individuals directed, engaged in, aided or otherwise participated in, actively or passively, an incident of hazing, disciplinary action may be imposed against the individual(s). If the investigation concludes that an organization knowingly permitted, authorized, or condoned hazing, disciplinary action may be imposed against the entire organization.

Reporting to the Commonwealth's Attorney: Per § 18.2-56 in the Code of Virginia, the university must report incidents of hazing that cause bodily injury to the Commonwealth's Attorney, who may take separate action.

# McCrery Decl. Ex. B



**Virginia Polytechnic Institute and State University**

# Acceptable Use and Administration of Computer and Communication Systems

## No. 7000

**Policy Effective Date:**
5/29/1991

**Last Revision Date:**
10/29/2020

**Policy Owner:**
Scott Midkiff

**Policy Author:** *(Contact Person)*
Brenda van Gelder

**Affected Parties:**
Undergraduate
Graduate
Faculty
Staff
Other

1.0 Purpose
2.0 Policy
3.0 Procedures
4.0 Definitions
5.0 References
6.0 Approval and Revisions

## 1.0 Purpose

This is a statement of policy regarding the use and administration of Virginia Tech computer and communication systems, network, services, and data. It relates to the use of any computing or communications device, regardless of ownership, while connected to the University network, and to the use of any information technology services provided by or through the University. Every individual using these systems and services is expected to know and follow this policy.

## 2.0 Policy

Individuals using or administering Virginia Tech computer and communication networks, systems, and/or data with any device must comply with all laws, regulations, and University policies and guidelines, including, but not limited to, the following:

- Standard for *Acceptable Use of Information Systems at Virginia Tech* (https://vt.edu/about/acceptable-use.html)

- Applicable policies and standards listed on the Division of Information Technology website (https://it.vt.edu/resources/policies.html)

### 2.1 General Use

Computing and communications capabilities at Virginia Tech have been developed to support the University's missions and administrative functions.  These can be used in similar fashion to `postal` mail and telephone services, and so are governed by principles of appropriate use for those services.

Activities involving these capabilities must be in accordance with the University Honor Codes, University policies, Faculty Handbook, Student Code of Conduct, and relevant local, state, federal, and international laws and regulations.

For use and administration to be acceptable, individuals must demonstrate respect of:

- the rights of others to privacy;
- intellectual property rights (e.g., as reflected in licenses and copyrights);
- ownership and integrity of data (including research data);
- sensitivity of data through responsible storage and transmission of sensitive data as documented in the Standard for High Risk Digital Data Protection (http://it.vt.edu/content/dam/it_vt_edu/policies/Standard-for-High-Risk-Digital-Data-Protection.pdf);
- system mechanisms designed to limit access; and the rights of others to be free of intimidation, harassment, and unwarranted annoyance.



**Virginia Polytechnic Institute and State University**

## 2.2 Policy Enforcement

The University regards any violation of this policy as a serious offense. Misuse or deliberate abuse of these services or data will result in investigation and enforcement when necessary.  Alleged violations will be subject to established university disciplinary policies and procedures applicable to the relevant individual and their affiliation to the University including, but not limited to faculty, staff, student and alumni.

Offenders may be prosecuted under the terms described in laws such as (but not limited to) the Privacy Act of 1974, the Computer Fraud and Abuse Act of 1986, The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003, the Junk Fax Act, and the Virginia Computer Crimes Act. This policy statement does not preclude prosecution of cases involving criminal misconduct under the laws and regulations of the Town of Blacksburg, the Commonwealth of Virginia and the United States of America.

## 3.0 Procedures

The following procedures for reporting and enforcement of violations of this policy, acceptable use requirements for University guests, and reporting suspected security breaches apply to all individuals using University computing and communication systems.

### 3.1 Reporting and Enforcement

Suspected violations of this policy should be reported by sending an email to abuse@vt.edu which automatically generates a ticket and follow up on the report. Alleged violations are then referred to the appropriate University office or law enforcement agency for further investigation.

The University may temporarily deny access to information technology resources during an investigation if it appears necessary to protect the integrity, security, or continued operation of these resources or to protect from liability during the course of the investigation.

Individuals, including University alumni, who use information technology resources in ways that violate a University policy, law(s), regulations, contractual agreement(s), or an individual's rights, are subject to limitation or termination of user privileges/ removal of access to services and appropriate disciplinary action, legal action, or both.

### 3.2 Acceptable Use Requirements for University Guests

Units that grant guest access to information technology resources must make their guests aware of these acceptable use requirements. The University accepts no responsibility or liability for any personal or unauthorized use of its resources by guests.

### 3.3 Reporting Suspected Cybersecurity Breaches

Any suspected cybersecurity incident or data exposure must be immediately reported to the appropriate Dean, Director, or Department Head and to the Information Technology Security Office (ITSO).  The Information Technology Security Office (ITSO) manages and coordinates detection, identification, containment, eradication, and recovery efforts of reported cybersecurity incidents with Virginia Tech departments' IT and other personnel. There are specific steps that must be followed in working with University officials in response to cybersecurity breaches and the ITSO is the first point of contact for facilitating that process from start to resolution.



**Virginia Polytechnic Institute and State University**

## 4.0 Definitions

**Misuse or abuse**: uses of University information technology resources or data that violate existing laws or University policies and procedures (including but not limited to University Information Technology Policies and Standards; Student Honor Codes; Student Code of Conduct; University Human Resources Policies; and University Financial Policies), or that otherwise violate generally accepted ethical norms and principles. Misuse or abuse also includes the sharing or transferring of an individual's university accounts, including network ID, password, or other access codes with one or more other persons, thus enabling the person(s)to gain access to University information technology resources.

## 5.0 References

Standard for Acceptable Use of Information Systems at Virginia Tech
     http://www.vt.edu/about/acceptable-use.html

Standard for High Risk Digital Data Protection
     http://it.vt.edu/content/dam/it_vt_edu/policies/Standard-for-High-Risk-Digital-Data-Protection.pdf

Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM)
     https://www.ftc.gov/tips-advice/business-center/guidance/can-spam-act-compliance-guide-business

Junk Fax Act of 2005
     https://www.congress.gov/bill/109th-congress/senate-bill/714

## 6.0 Approval and Revisions

Endorsed by the University Communications Resources Committee, May 29, 1991.

- Revision 1
  - Section 2. Deleted reference to Policy 2005, "Guidelines for University Administrative Information Resource Management."
  - Added reference to Acceptable Use Guidelines.

  Approved June 4, 1999, by Associate Vice President for Information Systems, Michael Williams.

- Revision 2
  Policy broadened to cover those who administer university resources as well as those who use them. New Section 3.1 – Reporting Suspected Security Breaches.

  Approved April 15, 2002 by Vice President for Information Technology, Earving L. Blythe.

- Revision 3
  September 9, 2006: Technical revision – policy renumbered to Information Technology Policy 7000 from former General University Policy 2015.

  Approved September 9, 2006 by Vice President for Information Technology, Earving L. Blythe.



**Virginia Polytechnic Institute and State University**

- Revision 4
  Updated to include all networked devices regardless of ownership and general updates of terminology and associated policies and standards.

  Approved April 3, 2018 by Vice President for Information Technology and CIO, Scott F. Midkiff.


- Revision 5
  Updated to clarify procedure for reporting and enforcing violations of this policy. Added a procedure for guests. Added definition of misuse and cited additional regulations.

  Approved October 29, 2020 by Vice President for Information Technology and CIO, Scott F. Midkiff.

# McCrery Decl. Ex. C



# Acceptable Use of Information Systems at Virginia Tech

Access to computer systems and networks owned or operated by Virginia Tech imposes certain responsibilities and obligations and is granted subject to university policies, and local, state, and federal laws. This standard applies to the use of any computing or communications device, regardless of ownership, while connected to the University network, and to the use of any information technology services provided by or through the University. Every individual using these systems and services is expected to know and follow this standard.  The referring policy is Policy 7000: Acceptable Use and Administration of Computer and Communication Systems. (PDF)

Acceptable use is always ethical, reflects academic honesty, and shows restraint in the consumption of shared resources. It demonstrates respect for intellectual property, ownership of data, system security mechanisms, and individuals' rights to privacy and to freedom from intimidation and harassment.

## Standard

In making acceptable use of resources you must:

  use resources only for authorized purposes.
  protect your user name and system from unauthorized use. You are responsible for all activities on your user name or that originate from your system.
  access only information that is your own, that is publicly available, or to which you have been given authorized access.
  use only legal versions of copyrighted software in compliance with vendor license requirements.
  be considerate in your use of shared resources. Refrain from monopolizing systems, overloading networks with excessive data, degrading services, or wasting computer time, connect time, disk space, printer paper, manuals, or other resources.

In making acceptable use of resources you must NOT:

  use another person's system, user name or credentials, password, files, or data without permission.
  use computer programs to decode passwords or access control information.
  attempt to circumvent or subvert system or network security measures.
  engage in any activity that might be purposefully harmful to systems or to any information stored thereon, such as creating or propagating viruses, disrupting services, or damaging files or making unauthorized modifications to university data.
  use university systems for commercial purposes, such as using electronic mail to circulate advertising for products.
  if you are an employee, use university systems for partisan political purposes, such as using electronic mail to circulate advertising for political candidates.
  make or use illegal copies of copyrighted materials or software, store such copies on university systems, or transmit them over university networks.
  use mail or messaging services to harass or intimidate another person, for example, by broadcasting unsolicited messages, by repeatedly sending unwanted mail, or by using someone else's name or credentials.
  waste computing resources or network resources, for example, by intentionally placing a program in an endless loop, printing excessive amounts of paper, or by sending chain letters or unsolicited mass mailings.
  use the university's systems or networks for personal gain; for example, by selling access to your user name or to university systems or networks, or by performing work for profit with university resources in a manner not authorized by the university.
  engage in any other activity that does not comply with the general principles presented above.

## Relevant Regulations

The following two federal regulations are of particular note with regard to acceptable use of email service and of fax machines.

Sending bulk email:  Any department or individual utilizing University resources to send email advertising or promoting a commercial product or service must conform to the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (otherwise known as CAN-SPAM (https://www.ftc.gov/tips-advice/business-center/guidance/can-spam-act-compliance-guide-business )). Note that all mailings of this sort must also conform to all other existing University policies (e.g., the use of University resources for personal gain is prohibited).  See the "Bulk Email at VT" article in the Knowledge Base (https://4help.vt.edu/sp?id=kb_article&sys_id=a0719dfddb1a9014e727ea084b961952) for full requirements and details.

Fax machines: Any department or individual utilizing fax machines to send information to others must comply with the Junk Fax Act of 2005 (https://www.congress.gov/bill/109th-congress/senate-bill/714) which, in part, stipulates that:

1.    The sender has an established business relationship with the person.

2.     The sender obtained the fax number through voluntary communication from the recipient or from an Internet directory or site to which the recipient voluntarily made the fax number available for public distribution.

3. The advertisement contains a conspicuous notice on its first page that the recipient may request not to be sent any further unsolicited advertisements, and includes a domestic telephone and fax number (neither of which can be a pay-per-call number) for sending such requests.

## Reporting Suspected Violations

Suspected violations of this standard and policy 7000 may be reported by sending an email to abuse@vt.edu which will automatically generate a ticket for follow up on the report.  See policy 7000 for further information.

## Information Disclaimer

Individuals using computer systems owned by Virginia Tech do so subject to applicable laws and University policies. Virginia Tech disclaims any responsibility and/or warranties for information and materials residing on non-university systems or available over publicly accessible networks. Such materials do not necessarily reflect the attitudes, opinions, or values of the Commonwealth of Virginia, Virginia Tech, its faculty, staff, or students.

*Revision date: September 1, 2020*

© 2021 Virginia Polytechnic Institute and State University. All rights reserved.

